Bohn, J.
INTRODUCTION
This matter was before this Court on July 20, 1999 for a hearing on the defendant’s motion to dismiss on account of the impairment of the integrity of the grand jury. Specifically, the defendant argues in his motion that the indictments returned by the grand jury, which charged him and others with insurance fraud, must be dismissed on the grounds that the integrity of the grand jury was impaired by the Commonwealth’s false, misleading, and unfair presentation of evidence. For the following reasons, the defendant’s motion will be DENIED.
BACKGROUND
In its indictments, the Commonwealth charges that the defendant, James N. Ellis Jr., an attorney with offices in Worcester, Massachusetts, assisted one David Formoso, his client, in asserting a fraudulent workers’ compensation claim against the St. Paul Fire and Marine Insurance Co. regarding an accident that had purportedly occurred on November 17, 1989 at the Westford Regency in Westford, Massachusetts. The Commonwealth alleges that Formoso, with Ellis’s assistance, concealed from St. Paul the fact that he had previously, and for a time simultaneously, pursued another workers’ compensation claim under the name Denis Milan, for a similar, prior injury occasioned in the course of his employment at Victory Button Company, in Leominster, Massachusetts, on March 25, 1989.
St. Paul began paying workers’ compensation benefits to Formoso shortly after the November 1989 accident. In 1993, however, St. Paul received a physician’s report indicating that Formoso could return to light duty. As a result, in December of 1993, St. Paul filed a complaint with the Massachusetts Department of Industrial Accidents seeking to discontinue Formoso’s benefits; and subsequently, based on information received from the Insurance Fraud Bureau of Massachusetts to the effect that Formoso’s entire claim might be fraudulent, sought to amend its December 1993 complaint to include claims for fraud and recoupment of benefits. At a DIA conference in June of 1994, Ellis admitted that he knew Formoso was the same person as Milan during the time he represented him on both claims.
*305 On June 13, 1994, the DIA (Sumner, J.) ordered Formoso’s benefits discontinued but did not rule on the motion to amend, that is, the judge did not rule on the possibility that Formoso’s entire claim might be fraudulent. St. Paul appealed the DIA order, seeking a ruling on the fraud and recoupment claims; however, it did not prosecute the appeal.
In December of 1994, St. Paul filed a complaint in United States District Court for the District of Massachusetts against Ellis & Ellis, et al.[1] seeking monetary damages on the common law claims of negligence and fraud. (Civil Action No. 95-10190-GAO.) At a deposition taken in connection with that litigation, Ellis again admitted his knowledge of the dual identity during the course of his representation. In April of 1998, the USDC (OToole, J.) directed a verdict for the defendant, holding that St. Paul had failed to-prove that it had relied on any misrepresentation or that it had paid monies that it was not actually obliged to pay under workers’ compensation laws.
At both the DIA conference and Ellis’s deposition, Ellis explained that Formoso told Ellis that he had immigration problems that would be exposed if Ellis revealed the dual identity. Ellis thus concealed Formoso’s dual identity because he believed that the attorney-client privilege obliged him to respect his client’s confidence. Ellis also stated that he believed that the two claims were separate and successive in time such that the insurance companies were each properly responsible for distinct injuries. Further, Ellis stated that, according to workers’ compensation laws, even if the two injuries overlapped, St. Paul would still be liable for the aggravation of the injury, such that there was no fraud perpetrated against them.
At the hearings before the grand jury, a witness read to the grand jury numerous inculpatory statements of the defendant contained in the transcripts of the federal litigation, including the defendant’s statements at his deposition that he knew of the dual identity of his client. The Commonwealth also presented the testimony of Westford Regency employee Tracy Flory who testified that the defendant admitted he knew of his client’s dual identity at the DIA conference in June of 1994.
The Commonwealth did not present testimony before the grand jury of Ellis’s explanations of his concealment as reflected in his deposition testimony. The Commonwealth did, however, submit as exhibits the three volumes of the St. Paul deposition testimony of James N. Ellis Jr. and informed the grand jury that the depositions were available for review. The Commonwealth also put in evidence Flory’s notes from the DÍA hearing which detail Ellis’s explanation for concealing Formoso’s dual identities.
Furthermore, the Commonwealth did not present the grand jury with any information concerning a lawyer’s professional responsibility not to disclose client confidences; however, the Commonwealth did caution the grand jury not to draw any inference from, or use for any purpose, the fact that a civil lawsuit had been filed against the defendant regarding these claims and not to draw any inference from, or use for any purpose, the fact that an attorney registered objections during the deposition.
DISCUSSION
The right to a grand jury indictment as to a serious crime is constitutionally based in Article 12 of the Massachusetts Declaration of Rights. Commonwealth v. Mayfield, 398 Mass. 615, 622 n.3 (1986), citing DeGolyer v. Commonwealth, 314 Mass. 626, 627 (1943). The opinion of the United States Supreme Court in Costello v. United States, 350 U.S. 359 (1956), has tended to discourage challenges to the nature and quality of grand jury evidence. Mayfield, 398 Mass. at 622 n.3. In Massachusetts, a court will not inquire into the competency or sufficiency of evidence heard by a grand jury unless “extraordinary circumstances” are present. Commonwealth v. Freeman, 407 Mass. 279, 282 (1990), citing Commonwealth v. Lammi, 310 Mass. 159, 163-64 (1941); see also, Commonwealth v. Club Caravan, Inc., 30 Mass.App.Ct. 561, 566 (1991), quoting Commonwealth v. Galvin, 323 Mass. 205, 211-212 (1948). Two such extraordinary circumstances where judicial inquiry is warranted are (1) when it is unclear that sufficient evidence was presented to the grand jury to support a finding of probable cause to believe the defendant committed the offense charged;[2] and (2) when the defendant contends that the integrity of the grand jury was impaired. Freeman, 407 Mass. at 282, citing Mayfield, 398 Mass. at 619-20; see also, Commonwealth v. LaVelle, 414 Mass. 146, 149 (1993), quoting Commonwealth v. McGahee, 393 Mass. 743, 746-47 (1985).
The Supreme Judicial Court has expressed its unwillingness to devise a comprehensive statement of what conduct does, and what conduct does not, impair the integrity of the grand jury process. Mayfield, 398 Mass. at 620. But that court has identified several grounds for dismissal of indictments if a defendant satisfies the heavy burden of demonstrating that the prosecutor impaired the integrity of the grand jury proceedings.[3] Commonwealth v. Kelcourse, 404 Mass. 466, 468 (1989); Commonwealth v. Pond, 24 Mass.App.Ct. 546, 551 (1987). First, dismissal of an indictment may be warranted if the Commonwealth misleads the grand jury as to the character of the evidence it has. O’Dell, 392 Mass. at 448-49 (dismissal of indictments required because Commonwealth introduced defendant’s statement that he was present at crime scene driving the getaway car, but withheld his exculpatory explanation). In O’Dell, the SJC held that the detective’s presentation to the grand jury of the defendant’s edited statement was not “a mere withholding of exculpatory evidence. Rather, presentation of the defendant’s edited statement tended to *306 distort the meaning of that portion of the defendant’s statement ...” Id. at 449. The failure to disclose known information impaired the proceedings because the defendant’s statement, as presented, “strongly suggested, incorrectly, an admission of guilt by silence.” Id.[4]
Second, the integrity of the grand jury may be impaired when the Commonwealth fails to alert the grand jury to the existence of exculpatory evidence that greatly undermines the testimony of an important witness or other evidence. Mayfield, 398 Mass. at 620-21; Commonwealth v. McGahee, 393 Mass. 743, 746 (1985); Connor, 392 Mass. at 854; Commonwealth v. Petras, 26 Mass.App.Ct. 483, 487 (1988). In Commonwealth v. Anselmo, 33 Mass.App.Ct. 602, 614 (1992), the defendant alleged that the grand jury was impaired because a state trooper did not tell the grand jury that another testifying witness had made an inconsistent statement prior to the grand jury testimony. The Appeals Court stated that the motion to dismiss the indictment was properly denied because even if the prior inconsistent statement constituted exculpatory evidence, “disclosure to the grand jury was not necessarily required.” Id. It is well settled, therefore, that a prosecutor is not required, in every instance, to present all exculpatory evidence to a grand jury. O’Dell, 392 Mass. at 447; see also, Drumgold, 423 Mass. at 239; LaVelle, 414 Mass. at 150, quoting McGahee, 393 Mass. at 746; Connor, 392 Mass. at 854. “Only when the prosecutor ‘possesses evidence which would greatly undermine the credibility of evidence likely to affect the grand jury’s decision to indict, [must he] alert the grand jury to the existence of such evidence.’ ” Anselmo, 33 Mass.App.Ct. at 614, quoting McGahee, 393 Mass. at 746. Thus, the prosecutor should not “distort the meaning of . . . the defendant’s statement” with an “unfair and misleading presentation to the grand jury of a portion of a statement attributed to the defendant without revealing that an exculpatory portion of the purported state-menthad been excised.” O’Dell, 392 Mass. at 447, 449; see also, Drumgold, 423 Mass. at 240.
Third, courts have found impairment where there has been knowing or reckless use of false testimony for the purpose of obtaining an indictment. Mayfield, 398 Mass. at 621-22; Salman, 387 Mass. at 166. In the case of false or deceptive evidence, it must further be shown that “the evidence (1) must have been given with the knowledge that it was false or deceptive, (2) must have been given with the intention of obtaining an indictment, and (3) must probably have influenced the grand jury’s determination to hand up the indictment.” Commonwealth v. Ali, 43 Mass.App.Ct. 549, 556-57 (1997), quoting Pond, 24 Mass.App.Ct. at 551; see also, Mayfield, 398 Mass. at 621.
In the case now before this Court, the Commonwealth presented inculpatory portions of the defendant’s deposition to the grand jury through testimony and presented the rest of his testimony, including his explanation for his conduct, as grand jury exhibits. Two of the transcripts were presented to the grand jury two months before it returned indictments, and one of the transcripts was marked as an exhibit several weeks before the grand jury returned those indictments, giving the grand jury ample time to review them. There need not be any showing that the grand jurors actually examined any specific document so long as the documents were available to them. Commonwealth v. Dessin, Middlesex Sup. Ct. No. 97-717 and 719, 8 Mass. L. Rptr. 302 (March 12, 1998; Cowin, J.), citing United States v. Carcaise, 442 F.Supp. 1209 (M.D.Fla. 1978); State v. Ciba-Geigy Corp., 222 N.J. Super. 343 (App.Div. 1988). That the statements the defendant contends are exculpatory were not presented via live testimony did not produce a biased jury because the Commonwealth did not withhold any portion of the defendant’s deposition statements from the review of the grand jury.
A prosecutor has no requirement, in every instance, to present exculpatory evidence. O’Dell, 392 Mass. at 447. It is only when the exculpatory evidence greatly undermines the evidence presented must the grand jury be alerted to its existence. Mayfield, 398 Mass. at 620-21. Here, the defendants presented no evidence that the defendant’s explanation would tend to undermine the inculpatory statements he made at the DIA conference and at his deposition; and even if the facts did constitute prosecutorial misconduct which this Court does not find, it certainly did not constitute the type of egregious presentation of evidence contemplated by those courts that have dismissed indictments based on grand jury impairment. See, e.g., O’Dell, 392 Mass. at 447; Salman, 387 Mass. at 167. Lastly, there is no evidence that the presentation of the omitted evidence would have influenced the grand jury not to indict, especially in light of the grand jury’s freedom to disregard the defendant’s explanation and disbelieve that his explanation negated his intent to commit insurance fraud.
The cases cited by the defendant in his reply memorandum do not advance his position. In United States v. Chanen, 549 F.2d 1306 (9th Cir. 1977), the court of appeals reversed the dismissal of the indictments against the defendant. The court stated that even though a second grand jury did not hear live testimony that a predecessor grand jury had heard, the facts simply did not “constitute . . . ‘fundamental unfairness’ or a threat to ‘the integrity of the judicial process.’ ” Id. at 1311.
Cases cited by the Chanen court where dismissal was warranted involved a prosecutor entering the grand jury deliberations and urging them to indict (United States v. Wells, 163 F. 313 (D.Idaho 1908)); and, an indictment obtained in retaliation for a change of venue motion which resulted in trial severance (United States v. DeMarco, 401 F.Supp. 505 (C.D.Cal. *307 1975), appeal docketed, No. 75-3824, 9th Cir. Dec. 29, 1975). Id. at 1309-10. Neither of those situations are present here.
In United States v. Samango, 607 F.2d 877 (9th Cir. 1979), the court of appeals affirmed dismissal of the indictments. The court noted that the prosecutor had a conversation with the grand jury foreperson off the record: presented gratuitous, prejudicial information to the grand jury; “merely deposited” lengthy transcripts with the grand jury; gave the grand jury a nine-day deadline to indict that discouraged “thorough, thoughtful, and independent evaluation of the evidence”; read testimony of a witness whose live testimony would have exposed his deficiencies as a witness; and did not inform the grand jury of its power to call additional, live witnesses. Id. at 882-84. The court specifically stated that “[t]he cumulative'effect of the above errors and indiscretions, none of which alone might have been enough to tip the scales, operated to the defendants’ prejudice by producing a biased grand jury.” Id. at 884. The facts presented in this case simply do not constitute the “fundamental unfairness” to the defendant found in Samango. See Chanen, 549 F.2d at 1311.
ORDER
For the reasons stated above, the defendant’s motion to dismiss on account of the impairment of the integrity of the grand jury is DENIED.

 Barnes N. Ellis Jr., Debra Kagan, Robert J. Marquis, Richard D. Surrette, William F. Russell, Joan Trottier, Anthony Ranauro, and David Formoso, a.k.a. Denis Milan.

 Probable cause requires more than mere suspicion but less than evidence sufficient to warrant a conviction. Commonwealth v. Roman, 414 Mass. 642, 643 (1993), quoting Commonwealth v. Hason, 387 Mass. 169, 174 (1982). In the case of a grand jury, the evidence must consist of reasonably trustworthy information sufficient to warrant a reasonable person in believing that the defendant committed the offense. Id.; see also, Commonwealth v. O'Dell, 392 Mass. 445, 451 (1984); Commonwealth v. McCarthy, 385 Mass. 160, 162-63 (1982). The defendant here does not allege that the evidence presented by the prosecution did not constitute probable cause to believe he had committed insurance fraud; rather the defendant alleges that the prosecution’s failure to present available exculpatory evidence impaired the grand jury such that it would not have found probable cause to issue the three indictments.

 Even if dismissal is warranted, it is only when the Commonwealth’s presentation to the grand jury was “so wilfully deceptive or otherwise egregious" will the Commonwealth be precluded from seeking to reindict. O'Dell 392 Mass. at 447, citing Commonwealth v. Salman, 387 Mass. 160, 167 (1982).

 In Commonwealth v. Drumgold, 423 Mass. 230, 240 (1996), the court did not dismiss the indictment because the “edited version of the defendant’s statement had no tendency to convert the defendant’s exculpatory statement into an inculpatory one. Unlike in O’Dell the meaning of the portion of the defendant’s statement that was recounted to the grand jury was not distorted by the omissions.”