COMMONWEALTH *vs.* JAMES A. HALEY.

Suffolk. September 10, 1992. - December 11, 1992.

Present: LIACOS, C.J., ABRAMS, LYNCH, & GREANEY, JJ.

*Practice, Criminal,* Capital case, New trial, Assistance of counsel, Continuance, Instructions to jury. *Constitutional Law,* Assistance of counsel.

Statement of the standard of review applicable to the grant or denial of a new trial in a criminal case. [773]

In a criminal case, the judge did not abuse his discretion in denying defense counsel's motion for a two-day continuance, presented on the morning the trial was to begin. [773-775]

In a proceeding on a motion for a new trial, the defendant in a first degree murder case made no showing that the representation he received from his trial attorney fell short of the constitutional standard for effective assistance of counsel. [775-778]

At a murder trial, the judge's instruction to the jury that "[a] reasonable doubt has been defined as that type of doubt which would make you pause in making a decision on a grave and important matter in your own personal lives" did not so trivialize the concept of reasonable doubt that a new trial was required. [778-779]

The fact that the judge at a murder trial gave supplementary instructions to the jury in the form set forth in *Commonwealth* v. *Tuey,* 8 Cush. 1, 2-3 (1851), after they had been deliberating for approximately four hours, did not, in the circumstances, provide a basis for ordering a new trial on the ground that the instruction was given prematurely. [779-780]

INDICTMENT found and returned in the Superior Court on September 13, 1971.

An amended motion for a new trial, filed on October 12, 1989, was heard by *George N. Hurd, Jr.,* J.

*Marina Medvedev,* Assistant District Attorney (*Vincent R. McDonough,* Assistant District Attorney, with her) for the Commonwealth.

*John E. Conwell* (*David Hayes Erickson* with him) for the defendant.

GREANEY, J. This is the Commonwealth's appeal from an order of a Superior Court judge (motion judge) granting the defendant, James A. Haley, a new trial in connection with his 1972 conviction of murder in the first degree. We conclude that a new trial should not have been ordered and direct the entry of an order denying the motion.

1. *Background.* The defendant was arrested on July 12, 1971, for the murder the day before of David Myers, his sister-in-law's boy friend. The defendant retained Mr. Alfred P. Farese, Sr., a well-known and experienced criminal defense attorney, to represent him at a probable cause hearing on July 23, 1971, and in November, 1971, the defendant's motion for assignment of Mr. Farese as his counsel was allowed. On March 3, 1972, the defendant was convicted by a jury of murder in the first degree on the basis of deliberate premeditation. The defendant was represented by Mr. Farese on his direct appeal. In addition to reviewing the defendant's numerous claims of error on that appeal, we reviewed the whole case on both the law and the evidence, pursuant to our duty under G. L. c. 278, §§ 33A-33G (presently G. L. c. 278, § 33E [1990 ed.]), and concluded that the evidence was sufficient to support the jury's verdict, and that "justice does not require the entry of a verdict of a lesser degree of guilt . . . or that there be a new trial." *Commonwealth* v. *Haley*, 363 Mass. 513, 524 (1973). For a summary of the evidence presented at the defendant's trial, see *id.* at 514-516.

In 1987, the defendant brought a pro se motion for a new trial pursuant to Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). Among other assertions, the defendant argued that he was denied his constitutional right to effective assistance of counsel because Mr. Farese stated at the opening of the trial that he was unprepared, and the trial judge denied Mr. Farese's request for a two-day continuance to continue his preparation. At the time the defendant brought this motion, Mr. Farese was deceased and the judge had retired. In May, 1988, the motion judge denied the motion without hearing,

concluding that the defendant had "failed to demonstrate se-rious incompetency, inefficiency or inattention of counsel." The defendant's motion for appointment of counsel to pursue the motion was also denied.

On February 1, 1989, the defendant moved in the Su-preme Judicial Court for the county of Suffolk to claim a late appeal from the order denying his motion for a new trial. See G. L. c. 278, § 33E. On February 13, 1989, a single justice of this court ordered that counsel be appointed for the defendant in the Superior Court, and that the case proceed there for "such other action as is needed."

Following the appointment of counsel, the defendant filed what was styled as an "amended" motion for a new trial ac-companied by affidavits and a lengthy memorandum of law. These documents more artfully set forth his original claim of ineffective assistance of counsel as well as several other claims of error at the trial which had not been raised on di-rect appeal or in his first motion for a new trial. The amended motion was returned to the motion judge. Based on the papers, the trial transcript, and arguments of counsel, and without holding an evidentiary hearing, the motion judge ordered that the defendant be granted a new trial. The judge concluded that "justice may not have been done" because in his opinion: (1) the trial judge should have granted Mr. Farese a forty-eight hour continuance to prepare the case; (2) Mr. Farese provided constitutionally ineffective represen-tation; and (3) the trial judge gave a defective reasonable doubt instruction and prematurely resorted to the instruction described in *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851). A single justice of this court, pursuant to G. L. c. 278, § 33E, granted the Commonwealth leave to appeal from the order of the motion judge. See *Commonwealth* v. *Francis*, 411 Mass. 579, 580, 583-585 (1992).[1]

---

[1]We reject the defendant's argument that the Commonwealth failed to take a proper appeal. We consider the Commonwealth's notice of appeal to have been timely filed, and any technical defects in the presentation of its appeal to have been cured by the single justice's order made pursuant to

2. *Standard of review.* In reviewing the grant or denial of a motion for a new trial, we will grant special deference to the views of a motion judge who was also the trial judge. *Commonwealth* v. *Grace,* 397 Mass. 303, 307 (1986). When a motion judge has not presided at the trial, we defer only to the judge's assessment of the credibility of witnesses at the evidentiary hearing on the new trial motion, but we consider ourselves in as good a position as the motion judge to assess the trial record. *Id.* In the instant case, the motion judge was not the trial judge, and he did not receive any testimony on the motion for a new trial. The matter was decided on an entirely paper record. In these circumstances, we are in the same position as the motion judge in assessing the strength of the defendant's claims.[2] *Commonwealth* v. *Tucceri,* 412 Mass. 401, 409 (1992).

3. *Merits.*[3] (a) *Motion for continuance.* At a pretrial conference in January, 1972, Mr. Farese indicated that he would be ready for trial on February 22, 1972. When the case was called on that date, Mr. Farese requested a continu-

---

G. L. c. 278, § 33E, and *Commonwealth* v. *Francis,* 411 Mass. 579 (1992).

[2]The motion judge accompanied his order with a twenty-two page memorandum of decision. That memorandum is taken virtually verbatim from the defendant's memorandum of law with some changes made to state certain matters as findings of fact and other changes to state matters as conclusions of law. There is no indication of any substantive personal analysis on the part of the motion judge of the issues in controversy. Cf. *Cormier* v. *Carty,* 381 Mass. 234, 237 (1980). While this problem needs to be noted, it is not determinative because we are in the same position as the motion judge in deciding whether the defendant has shown an entitlement to a new trial.

[3]The Commonwealth argues that the merits of the issues raised on the defendant's motion for a new trial should not be reached because the defendant waived the issues by not presenting them on his direct appeal or in his first motion for a new trial. In view of the motion's status as an "amended motion," and the motion judge's treatment of the issues on their merits, we consider the motion appropriate for substantive review. See *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 229 (1973), and cases cited; *Commonwealth* v. *Sibinich,* 33 Mass. App. Ct. 246, 247 (1992). See also *Commonwealth* v. *Cook,* 380 Mass. 314, 321 (1980); *Commonwealth* v. *Harrington,* 379 Mass. 446, 449-450 (1980).

ance to fulfil his engagement at a murder trial in Rhode Island. That request was allowed by the judge, and the trial was continued until February 28. When the case was called for trial again on February 28, Mr. Farese asked for a continuance of "approximately two days," because he had just completed the Rhode Island trial and felt that he "wouldn't have adequate time to prepare [this] case properly." The request was denied. The motion judge concluded that the trial judge had abused his discretion by not granting the two-day continuance. The motion judge suggested that Mr. Farese had been rendered ineffective thereby.

These conclusions are not supported. Mr. Farese had been involved in the case for eight months prior to the trial date. The docket discloses considerable pretrial activity and preparation by him, including the filing and disposition of many motions. Before February 22 (the date of the first continuance), the case had been the subject of a pretrial conference, and the date of trial selected apparently by mutual agreement among the prosecutor, Mr. Farese, and the judge. In connection with the requested continuance on February 28, Mr. Farese did not indicate any specific area in which he may have lacked adequate preparation, and the defendant now does not explain any way in which his defense might have been improved if Mr. Farese had been given another two days in which to prepare. In considering the request, the judge could take into account the length of time that had elapsed, the extensive pretrial activity, and what he (the trial judge) knew of Mr. Farese's experience. In the last respect, the experienced trial judge undoubtedly had some acquaintance with Mr. Farese and his approach to cases, and probably knew (or reasonably could have assumed), that a morning of trial request for a continuance couched in terms of "unpreparedness" was not an admission of incompetence by Mr. Farese, but rather a request to obtain time to develop further the contemplated defense strategy.

Of special significance to this issue is the lack of any indication in the trial record that Mr. Farese was in fact inept at trial by reason of indolent preparation. Mr. Farese exhibited

complete familiarity with the facts of the case. He conducted vigorous and thorough cross-examination of the Commonwealth's witnesses, introduced exhibits, made many successful objections, took 134 exceptions, introduced a strong claim of alibi through seven defense witnesses, made a persuasive closing argument, and proposed extensive jury instructions. Mr. Farese also demonstrated that he had investigated the background of Gloria Custis, the prosecution's key witness, to search for evidence which would throw suspicion on her testimony and implicate her as the murderer. See *Commonwealth v. Haley, supra* at 523. We conclude, as apparently did the trial judge, that Mr. Farese was not unprepared, and that his request for a continuance was essentially a delaying tactic. The request was properly denied. There was no abuse of discretion. See *Commonwealth v. Habarek,* 402 Mass. 105, 108 (1988); *Commonwealth v. Burbank,* 27 Mass. App. Ct. 97, 107 (1989).

(b) *Ineffective assistance.* The motion judge accepted the defendant's assertion that Mr. Farese had provided him with constitutionally ineffective assistance at the trial. Once we have given a defendant convicted of murder in the first degree full review pursuant to the obligations imposed by G. L. c. 278, § 33E, "our special powers of review under § 33E are no longer applicable. Any claim of ineffectiveness of counsel presented in a subsequent appeal from the [disposition] of a motion for a new trial, authorized by a single justice of this court, would not be tested under the § 33E standard but on the applicable constitutional standards, State and Federal." *Commonwealth v. Wright,* 411 Mass. 678, 682 n.1 (1992). Therefore, to be entitled to appellate relief on his claim that Mr. Farese was ineffective, the defendant must show that there has been "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth v. Saferian,* 366 Mass. 89, 96 (1974). Even if incompetency is found, the defendant must also show that he has likely been deprived of an "otherwise available, substantial ground of defence." *Id.* See *Strickland*

v. *Washington*, 466 U.S. 668, 687 (1984), describing the
standard for testing the ineffectiveness of counsel under the
Constitution of the United states (which we have said is a
standard no more favorable to a defendant than that under
the State Constitution). *Commonwealth* v. *Fuller*, 394 Mass.
251, 256 n.3 (1985).

(i) We first consider the conduct which the defendant
characterized as "the most egregious and prejudicial defi-
ciency" on Mr. Farese's part, and which the motion judge
considered to be of "particular implication." The conduct
concerns Mr. Farese's alleged failure to subpoena the correct
party to bring a document to trial, a visitors' logbook from
the building in Cambridge where the defendant worked. The
defendant maintains that the logbook would have shown that
he was at work in Cambridge until 4:15 P.M., the afternoon
before the murder. According to the defendant, the log
would have demonstrated that Gloria Custis was lying when
she testified that she saw him in Dorchester at about four
o'clock that same afternoon.[4] The Commonwealth asserts,
however, that the issue of the logbook is a "red herring." We
agree.

Even if we assume that Mr. Farese was ineffective or inat-
tentive in failing to obtain and introduce the log, it contains
nothing of value for impeachment. Custis testified that she
was with her sister, Brenda Haley, the defendant's estranged
wife, when she saw the defendant on the street in Dorchester
on July 10, the day before the murder, "late in the after-
noon," "around four, I guess." Brenda Haley also testified
that she and Custis had seen the defendant in Dorchester the
afternoon of July 10 at "about maybe four or five, maybe
six." The fact that the defendant had been in Dorchester
that afternoon was confirmed by a *defense* witness called by
Mr. Farese who testified that she had seen the defendant at
approximately 5 P.M. at a house in Dorchester, the location

---

[4]The motion judge was presented with a photograph of the page of the
logbook. The judge stated that the page "appears . . . [to] represent[ ] the
[original] document," and he assumed that it could be proved authentic.

of which was not far from where Custis and Brenda Haley claimed to have seen him. It is apparent that Custis's credibility could not have been seriously undermined by reason of what the log might have contained.[5]

(ii) The motion judge also gave consideration to the defendant's assertion that Mr. Farese was ineffective because he failed to do appropriate pretrial preparation and refused to discuss the case with the defendant during the trial. The defendant alleges that Mr. Farese had met with him on only two occasions prior to trial for a total of only forty-five minutes. Also, several defense witnesses presented affidavits claiming that Mr. Farese had not interviewed them until the day they testified. From these assertions, it is argued that Mr. Farese was unprepared and ineffective.

Even if we accept these allegations as true, raised as they are long after the trial and Mr. Farese's death, the defendant has not demonstrated any "issue of fact or law that could have been but was not exploited by counsel for the defendant's benefit in the original proceedings." *Commonwealth* v. *Saferian, supra* at 98. On a claim of failure to prepare and conduct an adequate defense, "the defendant [can] make no headway in the absence of a showing that the fault probably resulted in forfeiture of a substantial defense." *Id.* See *Commonwealth* v. *Sellon*, 380 Mass. 220, 227 (1980). No such showing has been made and, as indicated, the trial record shows competent representation at trial.

(iii) The motion judge gave some weight to the defendant's assertion that Mr. Farese was ineffective because he failed to request a curative instruction or a mistrial after being informed of an incident where several jurors viewed the defendant in restraints. Mr. Farese, however, appears to have made a tactical decision not to press the issue. Trial tactics

---

[5]Further, the log would not have substantively aided the defense. The Commonwealth's case depended on Custis's testimony that she saw the defendant commit the murder about five o'clock on the morning of July 11. The defense case sought to establish alibi and to prove that Custis was the murderer. The defendant's whereabouts on the afternoon of July 10 was not significant to the defense.

which may appear questionable from the vantage point of hindsight, do not amount to ineffective assistance unless "manifestly unreasonable" when undertaken. *Commonwealth* v. *Sielicki*, 391 Mass. 377, 379 (1984). *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978). This decision was not unreasonable, much less "manifestly unreasonable." Mr. Farese had brought three other motions for mistrial, all without success. He could well have concluded that a fourth such motion, based on these grounds, probably also would have failed. He also may have thought that it would be better not to request a curative instruction which could emphasize the fact that the defendant had been seen in restraints.[6]

(c) *Jury instructions.* (i) *Reasonable doubt.* In his charge to the jury, the trial judge stated that "[a] reasonable doubt has been defined as that type of doubt which would make you pause in making a decision on a grave and important matter in your own personal lives." The motion judge accepted the defendant's argument that the use of this language so trivialized the concept of reasonable doubt that a new trial was required. We reject the contention.

We have criticized the use of language in a reasonable doubt instruction which draws an analogy between the standard for making important personal decisions in the jurors' lives and the Commonwealth's burden of proof. The major thrust of the criticism has been directed at references to *specific* examples which tend to detract from the seriousness of the jurors' ultimate decision as to a defendant's guilt. See *Commonwealth* v. *Tameleo*, 384 Mass. 368, 370-371 (1981);

---

[6]The defendant and the motion judge also make reference to additional alleged omissions of Mr. Farese which are held out as other examples of ineffective assistance. None of these claims is amplified or supported by the record in any meaningful way. We are satisfied that none presents a situation in which better work by Mr. Farese might have made a difference.

The motion judge also appears to have given credence to the defendant's claim that the trial judge was biased. That issue was reviewed at length in the defendant's direct appeal and rejected. *Commonwealth* v. *Haley*, 363 Mass. 513, 516-520 (1973). On the same set of facts, it is not to be reconsidered.

*Commonwealth* v. *Williams*, 378 Mass. 217, 232 (1979); *Commonwealth* v. *Ferreira*, 373 Mass. 116, 129 (1977). The trial judge in this case did not provide the jury with specific examples. Furthermore, in *Commonwealth* v. *Bjorkman*, 364 Mass. 297, 307-309 (1973), we held the same reasonable doubt charge as given in the instant case, all but word for word, to be satisfactory. We see no basis for overturning the defendant's conviction based on the criticized statement.

(ii) *Tuey charge.* The jury began their deliberations at 10:57 on a Friday morning. At 3:19 P.M., the jury came back with a question relating to premeditation. After answering the question, the judge gave a supplementary instruction which included the substance of the instruction set forth in *Commonwealth* v. *Tuey*, 8 Cush. 1, 2-3 (1851).[7] The jury continued deliberations and returned a guilty verdict forty-five minutes after receiving the *Tuey* charge. The motion judge accepted the defendant's argument that the *Tuey* charge was given prematurely in granting a new trial.

Although it is not clear why the trial judge gave the *Tuey* charge when he did, "we do not find enough in the circumstances of its use here to render it coercive to the point of calling for reversal of the judgment." *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 98 (1973). The jury had been considering the case for approximately four hours. The evidence presented was not unduly extensive, and the issues before the jury were not complicated. See *Commonwealth* v. *Rollins*, 354 Mass. 630, 638 (1968) (no prejudice to defendant where *Tuey* charge given after four hours of deliberations when evidence not extensive and issues not complicated). See also *Commonwealth* v. *Connors*, 13 Mass. App. Ct. 1005 (1982). A trial judge has discretion in deciding when to give the charge. *Commonwealth* v. *Brunelle*, 361 Mass. 6, 12 (1972). Significantly, there is nothing in the record to indicate where

---

[7]The purpose of the charge is to instruct the jury concerning their decision making process in the event it appears the jury may be deadlocked. We made certain modifications to the *Tuey* charge, not relevant to this case, in *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 101-102 (1973) (Appendix A).

the jury stood at the time they received the instruction, and Mr. Farese made no objection to the use of the instruction. See *Lowenfield* v. *Phelps*, 484 U.S. 231, 237-241 (1988). We see no basis in this claim for ordering a new trial.

4. *Disposition.* The foregoing discussion removes from the case all of the principal considerations which the motion judge relied upon in granting a new trial. There is nothing else in the defendant's motion and accompanying materials which would support a new trial. Reexamination of the record of the trial discloses no basis for finding ineffectiveness on the part of Mr. Farese. Finally, nothing has been presented which would call for an evidentiary hearing on any claim made by the defendant in connection with his amended motion. Accordingly, the order granting the defendant's amended motion for new trial is reversed. An order is to enter in the Superior Court denying that motion.

*So ordered.*